JANET L. BIDDLECOM, Respondent, v ROBERT A. BIDDLECOM, Appellant. (Appeal No. 1.)

JANET L. BIDDLECOM, Respondent, v ROBERT A. BIDDLECOM, Appellant. (Appeal No. 2.)

Fourth Department, November 15, 1985

**APPEARANCES OF COUNSEL**

*Phillips, Lytle, Hitchcock, Blaine & Huber (Rebecca H. Baritot* of counsel), for appellant.

*Michalek, Montroy, Aman, Marrano, Trafalski & Gorski (Gerald M. Trafalski* and *Paul A. Vance* of counsel), for respondent.

## OPINION OF THE COURT

GREEN, J.

█ This appeal requires us to decide whether certain benefits received as a consequence of early retirement following a divorce are subject to equitable distribution. We hold that absent a specific agreement to the contrary, such benefits are not marital property but are the separate property of the retired spouse.

The parties were married in 1954. Plaintiff commenced this action for divorce in April 1983. A stipulated property settlement was entered on the record on May 11, 1983, which, among other things, awarded plaintiff a portion of defendant's pension upon his retirement. The pertinent provision provided: "The Defendant is entitled to a pension from his employer, National Fuel Gas, upon his retirement. A formula will be utilized, formula being the years of the marriage divided by the years worked, and toward the pension, times the net amount available from the pension, divided by one-half, and that figure will be the figure which he will continue to pay to the Plaintiff after he retires." The agreement also provided that defendant would pay plaintiff $200 per week for unallocated maintenance which was to be reduced to $150 per week when the parties' youngest child was emancipated.* Upon defendant's retirement or remarriage, whichever occurred first, maintenance would cease. The agreement further provided that plaintiff receive $18,000 for her interest in the marital residence and $2,500 as her share of defendant's "thrift plan" made available through his employer. This agreement was incorporated but not merged into the divorce decree granted December 14, 1983.

In the spring of 1984, defendant was offered by his employer an early retirement option which would allow defendant to receive his pension at a nonactuarial reduced rate. Defendant accepted the option and retired on May 1, 1984 with 32 years and 7 months of accredited pension service. His gross single life annuity pension benefit payment is $804.86 per month. This represents the same amount defendant would have re-

---

* This child joined the Armed Services in October 1984 at which time the defendant's maintenance was reduced accordingly to $600 per month.

ceived at age 65 had he not opted for early retirement. In addition, defendant receives from his employer the gross sum of $500 per month as supplemental benefits which were designed to compensate him for lack of eligibility for Social Security benefits and serve as an inducement for defendant to accept early retirement. This supplement will continue until October 1, 1990 when defendant will be eligible to collect Social Security. Defendant also received severance pay in the gross amount of $1,586 per month for the months of May, June, and July 1984.

Upon defendant's retirement he began paying plaintiff $321.17 as the portion of his net monthly pension benefit according to the formula agreed to by the parties in the agreement (see Szulgit v Szulgit, 94 AD2d 979; see also, Majauskas v Majauskas, 94 AD2d 494, affd 61 NY2d 481). At this time, pursuant to the agreement, defendant also ceased paying plaintiff maintenance. Plaintiff then moved to obtain a share of defendant's supplemental benefits and severance pay, in addition to the portion of his monthly pension.

Special Term granted plaintiff's motion reasoning that defendant's supplement and severance pay were part of his "pension package" (see, 126 Misc 2d 181). The court ordered defendant to pay plaintiff in addition to the $321.17 monthly pension benefit, the sums of $199.54 per month as her share of his net supplemental benefit and $1,478.63 as her share of his severance pay. The court also ordered defendant to pay plaintiff $859.42 in arrears which had accumulated since defendant's retirement. Pursuant to stipulation of counsel, defendant has been paying the above sums for the supplement, severance pay and arrears into a noninterest bearing escrow account pending resolution of this appeal. Defendant continues to pay $321.17 per month directly to plaintiff as her undisputed share of his pension benefit.

Only marital property is subject to equitable distribution. Marital property is defined as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action" (Domestic Relations Law § 236 [B] [1] [c]). It is well settled that an employee's vested rights in a noncontributory pension plan are marital property (Majauskas v Majauskas, supra). Accordingly, defendant does not contest plaintiff's entitlement to a portion of his pension. Defendant does challenge, however, plaintiff's alleged right to receive a portion of

his supplement and severance pay which he receives as a result of his early retirement.

Since defendant's right to receive the supplement and severance pay did not exist during the marriage or prior to commencement of the divorce action, these additional payments do not constitute marital property, but rather are defendant's separate property which Special Term was without power to distribute (see, Domestic Relations Law § 236 [B] [5] [b]). Moreover, neither the severance pay nor the supplement are in any sense part of defendant's "pension package". On the contrary, defendant receives each payment in addition to, and irrespective of, his pension.

The defendant was given a choice of accepting early retirement or possible layoff. The supplement was offered as an inducement to all employees who opted for early retirement. All of the approximately 30 employees who chose the option are receiving the same amount ($500 per month) which is not based on the amount of the pension each individual receives. The amount of severance pay is based on the difference between defendant's base monthly income calculated for the month of April 1984 minus his single life annuity. It in no way constitutes a pension benefit. The severance pay was sent to defendant in the form of a paycheck from which Social Security, and Federal and State withholding taxes were deducted. We note that neither the severance pay nor the supplemental benefits are paid from the pension fund (cf. Poggi v City of New York, 109 AD2d 265, 270). Rather, normal payroll deductions are taken from these amounts and the net amount is remitted to the defendant. As this court has observed in a similar context, the Legislature "has not provided for equitable distribution of future earnings and we should not do so, either by distorting the concept of property or by applying our own notions of equity" (Lesman v Lesman, 88 AD2d 153, 160, appeal dismissed 57 NY2d 956; see also, Martin v Martin, 74 AD2d 419, 423).

Special Term exceeded its authority by modifying the property settlement agreement between the parties. The agreement specifically provided that defendant would pay plaintiff a portion of his pension "after he retires". The agreement did not specify at what age defendant would, or could, retire. The parties further agreed that "upon the time the formula for the pension comes into being and the Defendant herein is retired and Plaintiff is thus receiving as a distributive award a portion of his pension, maintenance, needless to say, will

terminate at that point." The court determined that the settlement was fair and reasonable. Both parties were represented by counsel throughout the negotiation of the agreement. Absent a showing of fraud, mistake, or duress a stipulation of settlement of property issues in a matrimonial action, if found to be fair and reasonable, should not be disturbed or reformed by the court (see, Hallock v State of New York, 64 NY2d 224, 230; De Jose v De Jose, 104 AD2d 629, 630; Tinter v Tinter, 96 AD2d 556). Plaintiff has presented no evidence of overreaching or fraud by the defendant which would entitle her to reformation of the agreement (see, Mulligan v Mulligan, 98 AD2d 852; Surlak v Surlak, 95 AD2d 371, mot to dismiss appeal granted 61 NY2d 906). As the court below observed in a similar context, "[t]he parties have made their bargain and it is the duty of the courts to hold them to it" (Boss v Boss, 107 Misc 2d 984, 987).

The prospect of defendant's early retirement was foreseeable at the time the agreement was made. For example, had plaintiff chosen to do so, she could have provided that her maintenance would not cease until defendant reached 62 or 65 years of age, or that if defendant retired early she would continue to receive a stipulated amount in addition to her share of defendant's pension. The agreement, however, neither provided for the distribution of any additional benefits paid to defendant by his employer subsequent to the divorce, nor placed any restriction upon the time defendant could retire or begin to collect his pension benefits. Defendant has fully complied with the agreement by paying plaintiff a portion of his pension according to the formula set out in the agreement. Furthermore, there is no actuarial reduction of pension payments due to defendant's early retirement. Thus, defendant's selection of the early retirement option did nothing to prejudice plaintiff's rights under the agreement (cf. Farsace v Farsace, 97 AD2d 951; McDermott v McDermott, 123 Misc 2d 355; Matter of Spadaro v New York City Police Dept. Pension Serv., 115 Misc 2d 494).

Defendant also challenges a separate order of Special Term which ordered him to pay $1,000 to plaintiff's attorney for counsel fees to defend this appeal. Upon review of the record, including the financial affidavits and the affidavits of counsel, we cannot say that the court abused its discretion (see, Domestic Relations Law § 237 [a]; Klein v Klein, 53 AD2d 579, 580, appeals dismissed 40 NY2d 582; Goldsmith v Goldsmith, 56 AD2d 834; Lehman v Lehman, 117 Misc 2d 719).

Accordingly, the order directing defendant to pay plaintiff a portion of his supplement and severance pay should be reversed and the order directing defendant to pay plaintiff's counsel fees should be affirmed, without costs.

DILLON, P. J., DENMAN, BOOMER and O'DONNELL, JJ., concur.

Appeal No. 1—Order insofar as appealed from unanimously reversed, on the law, without costs, and application denied.

Appeal No. 2—Order unanimously affirmed, without costs.